**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| Ester A.L. Verbovsky, et al., | ) | **CASE NO. 1:16 CV 2382** |
| | ) | |
| Plaintiffs, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| Goodbaby Int'l Holdings Ltd., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |


## INTRODUCTION

This matter is before the Court upon the parties' Claim Construction Briefs (Docs.14,

15). Plaintiffs Esther A.L. Verbovsky and Hug Me Joey, LLC, filed this action on September 27,

2016, alleging patent infringement of U.S. Patent No. 6,467,840 (the '840 Patent) by Defendant

Goodbaby (Hong Kong) Ltd. The '840 Patent is entitled "Child's Car Seat Insert" and is directed

to a child car seat insert adapted for specific interaction with a child car seat and to a child car

seat having such an insert. Plaintiffs allege that Goodbaby's product the GBChild Asana 35 AP

Infant Car Seat infringes Claims 1-9 and 23 of the '840 Patent.

A court's first task in determining whether an accused device infringes a patent is to

1

construe the claims to ascertain their proper scope. *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308 (Fed. Cir. 2003). The parties have articulated their positions regarding the proper construction of the disputed claim terms in their claim construction briefs, response briefs, and a joint claim construction and hearing statement. Upon consideration of the parties' briefs and arguments, the Court construes the disputed terms as set forth herein.

## ANALYSIS

### A. The law of claim construction

"[T]he interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court." *Markman v. Westview Instruments*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). In construing claim terms, "the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to 'particularly point[] out and distinctly claim[] the subject matter which the patentee regards as his invention.'" *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (quoting 35 U.S.C. §112, ¶ 2). "Words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed.Cir.2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996)). The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention[.]" *Id.* at 1313 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed.Cir.2004)). "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the

context of the entire patent, including the specification." *Id.*

Accordingly, the court first looks to the claim itself. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. In these situations, a general purpose dictionary can be helpful. *Id.*

Claims must be read in view of the specification. *Id.* at 1315. The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* However, while the court may look to the specification to interpret the meaning of a claim term, it may not read a limitation from the written description into a claim. *Id.* at 1323.

A court may also consider the patent's prosecution history when conducting claim construction. *Id.* at 1317. The "prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.; see also Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005). Here, neither party cites to the prosecution history.

All other evidence is considered extrinsic and may be relied upon by the court in its discretion. *Markman*, 52 F.3d at 980; *Phillips*, 415 F.3d at 1317. Extrinsic evidence, however, is less reliable than intrinsic evidence in determining how to read claim terms. *Phillips*, 415 F.3d at 1318. Thus, the court should restrict its reliance on extrinsic evidence to educating itself regarding the field of invention or to determining what a person of ordinary skill in the art would

have understood the claim terms to mean. *Id.* at 1319; *see also Markman*, 52 F.3d at 986 ("It is not ambiguity in the document that creates the need for extrinsic evidence but rather unfamiliarity of the court with the terminology of the art to which the patent is addressed."). Extrinsic evidence may not be used to vary or contradict the terms of the claims. *Markman*, 52 F.3d at 981.

As a result, a court should not place excessive reliance on dictionaries. *Phillips*, 415 F.3d at 1321. "The main problem with elevating the dictionary to such prominence is that it focuses the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent. ... [H]eavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." *Id.*

A court may not use the accused product as a form of extrinsic evidence to supply limitations for patent claim language. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1330-31 (Fed. Cir. 2006). This rule "forbids a court from tailoring a claim construction to fit the dimensions of the accused product or process and to reach a preconceived judgment of infringement or noninfringement." *Id.* However, while claim construction "is independent of the device charged with infringement, it is convenient for the court to concentrate on those aspects of the claim whose relation to the accused device is in dispute." *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1383 (Fed. Cir. 2011).

### B. Construction of the disputed terms in Claims 1 and 23 of the '840 Patent

At the outset, the Court notes that the briefing in this case has not been a model of clarity and that it was something of a struggle to decipher even which terms are in dispute let alone the

parties' respective positions regarding the disputed terms. The Court has endeavored to do its best to interpret their arguments and determine the appropriate construction of the terms at issue.

Claims 1 and 23 of the '840 Patent are set forth below with the disputed terms highlighted in bold italics:

1. An *insert* for location in a child's car seat for preventing slouching of a child adapted to be placed in the car seat wherein the car seat includes a seat portion and a backrest provided with a pair of shoulder straps that are operative to extend over the child to releasably engage a safety buckle, said *insert* comprising:

first and second *continuous surface portions defining* a *solid-wedge-shaped singular* body;
said first *surface portion* being for facing the child when placed in the child's car seat, said second *surface portion* being for facing the backrest and the seat portion of the child's car seat,
said first *surface portion* adapted for *extending angularly between the seat portion* and *the region of a midpoint of the backrest* of the child's car seat;
said first *surface portion adapted* for *forming* an *obtuse cradle angle* and an *acute angle* with the seat portion of the child's car seat;
said *cradle angle* being located outside of said body, said *acute angle* being located at least in part inside said body,
said body being for transferring weight of the child to the child's car seat.

23. Apparatus comprising:

a child seat to be placed on a vehicle seat, said child seat having a backrest and a seat portion;
an *insert* for location in said child seat for minimizing slouching of a child placed on said child seat;
said *insert*, when *located in said child seat*, extending *between said seat portion* and *the region of a midpoint of said backrest*, said *insert* comprising:
first and second *continuous surface portions defining* a *solid wedge-shaped singular* body;
said first *surface portion* being for facing the child in said child seat, said second *surface portion* being for facing said backrest and said seat portion of the child seat;
said body being for transmitting the weight of the child to the child seat;
said first *surface portion* forming an *obtuse angle of between 105° and 135°* with said seat portion *when said body is transmitting the*

5

*weight of the child to the child seat*.

**1. Terms where the parties appear to agree that the ordinary meaning applies**

For many of the claim terms in dispute, Plaintiffs make the same argument: "Plaintiffs believe[] that based on the plain and ordinary meaning and in conjunction with the practice of demarcating claim terms with punctuation (separated by semicolons) and printing style (indentation) and that it is unnecessary to parse the claim element into individual words." (The Court will hereinafter refer to this as the "punctuation/indentation argument"). In most of these situations, they do not propose a construction of the term but instead refer to the accused product and argue that it contains the term in dispute. In some situations, they offer one or more dictionary definitions of the term, but, in general, do not identify a specific definition that they want the Court to adopt.

The Court assumes that, with their punctuation/indentation argument, Plaintiffs are arguing that any indented phrase separated by colons is a single claim term that must be construed in its entirety and cannot be parsed into smaller portions. They cite no support for this argument, and, as Goodbaby points out, courts frequently construe terms that constitute less than an entire phrase demarcated by indentations and semicolons. In addition, the Court will not use Goodbaby's accused product to add limitations to the claim language. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1330-31 (Fed. Cir. 2006). Thus, where the Plaintiffs have made the punctuation/indentation argument, the Court will assume that the Plaintiffs believe that the plain and ordinary meaning of the term applies.

For its part, Goodbaby argues that a number of the claim terms should be given their ordinary meaning. The Court will thus begin with a list of terms where there is little, if any

dispute between the parties:

**a. "Forming"**

The parties agree that "forming" should be given its ordinary meaning and do not propose a construction. The Court determines that "forming" means "forming."

**b. "When located in said child seat"**

The parties agree that this term should be given its ordinary meaning and that it means "located in the child seat." The Court determines that "when located in said child seat" means "located in the child seat."

**c. "When said body is transmitting the weight of the child to the child seat"**

The parties agree that this term should be given its ordinary meaning and that it means "when the body is transmitting the weight of the child to the child seat." The Court determines that this term means "when the body is transmitting the weight of the child to the child seat."

**d. "Angle of between 105 and 135 degrees"**

The parties agree that this term should be given its ordinary meaning and that it means "angle of between 105° and 135°." The Court agrees that this term means "angle of between 105° and 135°."

**e. "Obtuse"**

The parties agree that this term should be given its ordinary meaning. The Court agrees and determines that "obtuse" means an "angle greater than 90° and less than 180°."

**f. "Defining"**

Goodbaby argues that the term "defining" should be given its ordinary meaning, which it says is "mark out the boundary or limits of." Plaintiffs apply the punctuation/indentation

argument to the term, refer to the accused device, and do not clearly propose a construction. They do, however, cite the dictionary definition of "defining" as "to fix or mark the limits of." The Court will give the term "defining" its ordinary meaning, "to mark the limits of."[1]

### g. "For extending angularly"

Goodbaby argues that the term "for extending angularly" should be given its ordinary meaning, which it says is "extending at an angle." Plaintiffs apply the punctuation/indentation argument to the term, refer to the accused device, and do not propose a construction. The Court agrees that this term should be given its ordinary meaning, "extending at an angle."

### h. "Between the seat portion"

Goodbaby argues that "between the seat portion" should be given its ordinary meaning. Plaintiffs make the punctuation/indentation argument and refer to the accused device. They cite the dictionary definition of "an intermediate space or interval" but do not argue that this construction should be adopted. Nothing in the specification indicates that the term "between the seat portion" should be given anything other than its ordinary meaning. Accordingly, the Court finds that no construction is necessary and will afford the term its plain and ordinary meaning.

---

[1]     Although the parties have cited essentially the same dictionary definition of "defining," Plaintiffs object to Goodbaby's construction of the term. They argue that "changing the term 'defining' from a verb to a noun in this case is an attempt to impose additional functional limitations that simply do not exist anywhere in the specifications nor claims." The Court does not agree that Goodbaby's proposed construction (which is nearly identical to the dictionary definition cited by Plaintiffs) changes the term from a verb to a noun.

### i. "Continuous"

Goodbaby proposes that the term "continuous" refers to "an unbroken and/or uninterrupted surface" and cites the specification as support. *See* (Doc. 15 at 6) (quoting '840 Patent, Col. 8, lines 55-56) ("The support 212 is a solid and uniform wedge shaped piece with a continuous surface."). Plaintiffs apparently do not dispute Goodbaby's construction, arguing that the term "continuous" should be construed as "being a single element, not discontinuous, interrupted or broken."

Because the parties are in agreement that "continuous" means "uninterrupted or unbroken," the Court construes the term "continuous" to mean "uninterrupted or unbroken." *See Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 31 F. App'x 727, 731 (Fed. Cir. 2002) ("The accepted meaning of 'continuous' is: marked by uninterrupted extension in space, time, or sequence.") (citing *Webster's Ninth New Collegiate Dictionary* at 284) .

### 1. Terms in dispute

### a. "Insert"

Goodbaby proposes that the term "insert" be construed to mean a "support." It cites the patent specification, which consistently describes the insert as a support. (*See, e.g.,* Col. 8, lines 47-67 ) ("The support 212 is a solid and uniform wedge shaped piece with a continuous surface. In the embodiment shown in FIGS. 17-17a, the support includes a curved surface portion 262 and an opposite surface portion 264 located opposite the curved surface portion."); (Col. 9, lines 1-65). Plaintiff does not propose a construction for "insert" with respect to Claim 1. With respect to Claim 23, Plaintiffs' proposed construction is "a device for location in a child's car seat for

preventing slouching of a child adapted to be placed in the car seat." (Doc. 14 at 12). Plaintiff argues that "Defendant wishes to change the definition of the term 'insert' to add different functionality over and above that of ordinary use of the word or that supported by the specification."

The Court construes the term "insert" to mean "support" because the patentee used the word "support" as a synonym for "insert" in the specification. *See, e.g., AIA Engineering Ltd. V. Magotteaux Intern. S/A*, 657 F.3d 1264, 1276 (Fed. Cir. 2011) ("In this case, the intrinsic evidence reveals that the patentee acted as his own lexicographer and used 'homogeneous solid solution' as a synonym for 'homogeneous ceramic composite.'"). Moreover, the Court will construe "insert" consistently in all of the claims of the '840 Patent. *See, e.g., Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361 (Fed. Cir. 2005) ("[C]ourt[s] interpret[] claim terms consistently throughout various claims of the same patent.").

### b. "Surface portion"

Goodbaby argues that "surface portion" should be given its ordinary meaning and asks for the Court to construe the term as "outside or uppermost layer." Plaintiffs apply the punctuation/indentation argument to the term and argue that "Defendant's construction...suggests continued hairsplitting of generally known and acknowledged terms into separate individual words."

The Court determines that "surface portion" needs no construction and that it should be given its ordinary meaning because nothing in the written description compels a different construction. *See Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1307 (Fed. Cir. 2003) (holding that "the ordinary meaning of the claim term 'back surface' is a surface

at the back of the block," while noting that the dictionary definition of "surface" is "the exterior or outside of an object or body").

### c. "First surface portion"

Plaintiffs apply the punctuation/indentation argument to the term "first surface portion" and also refer to the accused product. They do not propose a construction of the term. With respect to "first and second continuous surface portions," however, Plaintiffs propose that the term means the "front and back surfaces of the low birthweight insert." (Doc. 19, at 9). Goodbaby proposes that the term "first surface portion" means "top surface of the insert" and cites to reference number 264 in Figures 17-23, which depicts the top portion of the insert.

The Court determines that "first surface portion" does not need to be construed as either the "top" or "front" surface portion because the claim language itself explains that the "first surface portion" is the surface portion "for facing the child when placed in the child's car seat."[2] The specification also explains that "[t]he surface portion 264 faces the child." (Col. 8, line 64).

### d. "First and second continuous surface portions"

In addition to asking for separate constructions of "surface portion," "first surface portion," and "continuous," the parties also ask the Court to construe the phrase "first and second continuous surface portions." With respect to Claim 1, Plaintiffs apply the punctuation/indentation argument to the term and also cite to the accused device. With respect to Claim 23, they argue that the phrase means "the front and back surfaces of the low birthweight

---

[2]    The claim language explains that the "second surface portion" is "for facing the backrest and the seat portion of the child's car seat."

insert." (Doc. 19 at 1, 9). Defendants argue that the phrase means "the joining of the first and second surface portions, unbroken, and/or uninterrupted." (*Id.* at 11) (citing Figs. 17-21; Col. 2, lines 54-56; Col. 3, lines 15-17; Col. 8, lines 55-56).

In accordance with the Court's foregoing constructions, it construes this term to mean "first and second unbroken or uninterrupted surface portions." Moreover, the Court will afford the term the same meaning throughout the various claims of the '840 Patent.

### e. "Adapted"

Plaintiffs propose that the term "adapted" means "physical modification of a structure specifically for the use as further set forth in the claim" and "configured to." (*See* Doc. 14, at 9) (quoting *TouchTunes Music Corp. v. Rowe Int'l Corp.*, 2010 U.S. Dist. LEXIS 74043 (S.D.N.Y. Jul. 21, 2010); *Boston Sci. Corp. v. Cordis Corp.*, 2006 U.S. Dist. LEXIS 94329 (N.D. Cal. Dec. 20, 2006)). Thus, according to Plaintiffs, in the claim element "'said first surface portion adapted for extending angularly between the seat portion and the region of a midpoint of the backrest of the child's car seat,' the term 'adapted'...means that the first surface is physically modified to specifically fit within the angular bend of the child's car seat." Goodbaby does not propose a definition of "adapted" and states that it should be given its ordinary meaning.

The Federal Circuit has noted that the phrase "adapted to" "generally means 'made to,' 'designed to,' or 'configured to,' though it can also be used more broadly to mean 'capable of' or 'suitable for.'" *In re Man Mach. Interface Techs. LLC*, 822 F.3d 1282, 1286 (Fed. Cir. 2016) (quoting *In re Giannelli*, 739 F.3d 1375, 1379 (Fed. Cir. 2014)). Here, the narrower construction

is appropriate.[3] Thus, the Court will construe "adapted" to mean "made to," "designed to," or "configured to."

**f. "Solid"**

Goodbaby proposes that the term "solid" means "comprised of a single uniform material." It argues that its proposed construction is supported by the patent specification and is consistent with the plain meaning of the term. The specification uses the term "solid" in several locations: "The support 212 is a solid and uniform wedge-shaped piece with a continuous surface." (Col. 8, lines 55-56). "The insert includes first and second continuous surface portions which define a solid wedge-shaped singular body." (Col. 2, lines 54-56). "The insert comprises first and second continuous surface portions which define a solid wedge-shaped singular body." (Col. 3, lines 15-17).

Plaintiffs argue that the claims and specification do not refer to the term "solid" as connoting the uniformity of a material. They apply the punctuation/indentation argument to the term and do not clearly propose a construction. While they list numerous dictionary definitions, they do not identify which one, if any, they believe is the appropriate construction of the term. Finally, Plaintiffs again refer to the accused product, arguing that their assertion "that the Accused Product includes a car seat insert that fills the recess space between the infant and the car seat in a form that lacks cavities is far from frivolous and far from being an impossible or unreasonable assertion."

On review, the Court finds that Goodbaby's proposed construction improperly supplies a

---

[3]     Plaintiffs appear to agree as their own proposed construction applies the narrower construction.

limitation to the term "solid" that is not supported by the claim language or the specification. Nothing in the claim language itself indicates that the patentee intended the term "solid" to refer to the uniformity of the material used to make the insert. Neither does the specification support Goodbaby's construction. In the portion of the specification that it cites, the term "uniform" is not used as a definition of the term "solid" and does not refer to the material comprising the insert. Where the specification addresses the material comprising the insert, it notes only that the insert should be comprised of a "flexible resilient material" that is "preferably made of a cushioning media such as a flame retardant foam rubber or foam vinyl." (Col. 8, lines 47-49). It does not specifically disclaim material that is not uniform. Thus, the Court finds that no construction is necessary and that the term "solid" should be given its ordinary meaning.

### g. "Wedge-shaped"

Goodbaby proposes that the term "wedge-shaped" refers to "narrowly triangular." As support, it cites to Figures 17-23 of the specification, which it states depict a narrowly triangular, wedge-shaped support. Plaintiffs apply the punctuation/indentation argument to this term and do not clearly propose a construction. They refer to the accused product and argue that the first and second continuous surface portions of the product "together...define a single (i.e. one) wedge-shaped body." In their opening brief, Plaintiffs also cite to dictionary definitions of the term: "shaped like a wedge" and "narrowly triangular, wider at the apex and tapering toward the base" but do not argue that the Court should adopt either of these definitions. In their response brief, Plaintiffs argue that Goodbaby's proposed construction of "narrowly triangular" "chang[es] the breadth, scope and meaning of the patent" and that "even an elementary school child could identify a wedge shaped object."

On review of Figures 17-23, the Court does not find that they depict figures that are necessarily "narrowly triangular." Moreover, there is nothing in the specification to suggest that "wedge-shaped" should be given anything other than its ordinary meaning. Accordingly, the Court finds that no construction is necessary and will afford "wedge-shaped" its plain and ordinary meaning.

### h. "Singular"/"singular body"

Goodbaby proposes that the term "singular" means "comprising a single structure." As support, it cites the specification: "Referring to FIGS. 17-20, the back and buttocks support 212 is a singular piece of flexible resilient material." (Doc. 15, at 7-8) (quoting '840 Patent, Col. 8, lines 47-48). Plaintiffs apply the punctuation/indentation argument to the term "singular body" and refer to the accused device. While they refer to dictionary definitions ("separate; individual"; "of or relating to a single instance or to something considered by itself"), they do not propose that the Court adopt any of the definitions. (Doc. 19, at 3-4).

The Court determines that no construction of the term "singular" is necessary and that it should be given its plain and ordinary meaning.

### i. "The region of a midpoint of the/said backrest"

Goodbaby argues that the term "the region of a midpoint of the/said backrest" refers to an "area near the midpoint of the backrest at least closer to the backrest midpoint than the bight[4] of the backrest support and the seat portion." It claims that while a person of ordinary skill in the art

---

[4] A "bight" is "1. a bend in a coast forming an open bay; *also*: a bay formed by such a bend. 2: a slack part or loop in a rope." https://www.merriam-webster.com/dictionary/bight

would understand the word "region" to "allow[] some flexibility as to the <u>exact</u> area being referred to, for the term to have <u>any meaning</u> whatsoever, the term has to have some definition." Because the '840 Patent discloses a child car seat having a backrest, it asserts that "the 'midpoint' of the backrest can clearly be defined as the location halfway between the top and bottom of the backrest. In accordance therewith, a person of ordinary skill in the art would clearly understand that the 'region of the midpoint' would <u>at least</u> have to be closer to the midpoint of the backrest than the bottom or the top thereof." (Doc. 15, at 8-9). According to Goodbaby, if the term is not construed in this manner, then the phrase "region of a midpoint" would have no meaning and would be obviated as a claim limitation. It further asserts that the claim would be indefinite if it is not given this construction because it would not sufficiently inform those skilled in the art about the scope of the invention. (Doc. 18, at 7) (citing *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014)).

Plaintiffs propose that the term means "near the middle." As with nearly all of the claim terms, Plaintiffs also apply their punctuation/indentation argument and refer to the accused device. They argue that Goodbaby's proposed construction "attempts to add a level of mathematical and geometric exactitude that is not only incapable of being met by any device, but is also well outside what would be understood by a person having ordinary skill in the relevant art in light of the proposed patent teachings."

The Court rejects Plaintiffs' proposed construction because it is not supported by the claim language or the specification. It also renders the term at least as ambiguous as the claim language itself and would not "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S.Ct. at 2124. *See also Liberty Ammunition, Inc. v.*

16

*United States*, 835 F.3d 1388, 1396 (Fed. Cir. 2016) ("claims having terms of degree will fail for indefiniteness unless they 'provide objective boundaries for those of skill in the art' when read in light of the specification and the prosecution history").

Further, the Court agrees with Goodbaby that this term must have some definition to have any meaning and avoid failing for indefiniteness. Contrary to Plaintiffs' assertion, Goodbaby's proposed construction does not require "mathematical and geometric exactitude." In fact, Goodbaby explicitly recognized that the term "region" allows for flexibility and included such flexibility in its construction while still providing for an objective boundary. Nevertheless, the Court believes that Goodbaby's use of the word "bight" in its construction–a word that does not appear in the claim language or specification–adds unnecessary confusion to the claim term. The Court therefore construes the term "the region of a midpoint of the/said backrest" to mean "an area near the midpoint of the backrest at least closer to the backrest midpoint than the top or the bottom of the backrest."

### j. "Extending between said seat portion and the region of a midpoint of said backrest"

Plaintiffs also ask the Court to construe the term "extending between said seat portion and the region of a midpoint of said backrest" in Claim 23. Plaintiffs' proposed construction of this term is: "The insert (the "low birth weight infant body support", item 14 in the defendant's Carrier Features list) extends from the seat upwards along the back, but does not extending [*sic*] entirely to the top of the carseat." (Doc. 14, at 13; Doc. 19, at 9). Plaintiffs have simply disguised a request that the Court find that the accused device contains the claim limitation at issue as a proposed claim construction. As noted above, however, a court may not "tailor a claim

construction to fit the dimensions of the accused product...to reach a preconceived judgment of infringement." *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1330-31 (Fed. Cir. 2006). In accordance with the Court's foregoing constructions, it construes this term to mean "extending between the seat portion and the area near the midpoint of the backrest at least closer to the backrest midpoint than the top or the bottom of the backrest."

### k. "Cradle angle"

Goodbaby's proposed construction of "cradle angle" is "the sum of the acute angle and the base angle." It cites the specification as support: "The cradle angle ß is substantially equal to the sum of the angle $\ominus$[5] i.e. 30° and the base angle a, i.e., 90°. As mentioned above, the angle $\ominus$ is 15°-45°, and preferably, 30°. Thus, the cradle angle ß is approximately 15°-45°, and preferably, 30° larger than the base angle a. Thus, the cradle angle ß is approximately 105°-135°, and is preferably 120°." ('840 Patent, Col. 10, lines 65-67-Col. 11, lines 1-3).

Plaintiffs' proposed construction is "position or orientation of a child's body when supported." (Doc. 14, at 12) (citing Col. 5, lines 55-60) ("When inserted in the car seat, the base bottom 121 forms a cradle angle independent of base angle a. Cradle angle is larger than base angle a such that the cushioning positioner 10 places the child's body in a less inclined (i.e., more supine) orientation.").

"Cradle angle" has no ordinary meaning and is thus in need of a construction. The specification explicitly defines the term to mean substantially equal to the sum of the acute angle and the base angle. Thus, the Court adopts Goodbaby's construction.

---

[5]  "Angle $\ominus$" refers to the acute angle.

**l. "Acute angle"**

Goodbaby proposes that the term "acute angle" refers to the "angle between the first surface portion and straight portion of curved surface portion of the support." As support, it cites the specification, which states: "The curved surface portion 262 has a part 262a which is substantially a quarter-circle and an adjacent part 262b which is straight and forms an acute angle ⊖ from the surface portion 264. The acute angle ⊖ between the surface portion 264 and the straight portion 262b of the curved surface portion 262 of the support 212 is within the range of 15-45° and is preferably 30°." (Col. 8, line 67-Col. 9, lines 1-5; *see also* Fig. 17a below; Figs. 18a, 19a).



Plaintiffs argue that the specification does not provide a definition of the term "acute angle" and that it should be given its plain and ordinary meaning, "an angle less than 90°."

The Court finds that the patentees intended for the term "acute angle" to have a more precise meaning than its ordinary meaning. Indeed, they acted as their own lexicographers with respect to the term by specifically defining the "acute angle" as "the angle between the first surface portion[6] and the straight portion of the curved surface portion of the support." Moreover,

_____

[6]      As noted above, "surface portion 264" refers to the "first surface portion."

each of the preferred embodiments identifies the acute angle as the angle between these portions of the insert. Thus, the Court construes the term "acute angle" to mean "the angle between the first surface portion and the straight portion of the curved surface portion of the support."

**C. Construction of the disputed terms in Claims 2-9 of the '840 Patent**

Claims 2-9 of the '840 Patent are set forth below with the disputed terms highlighted in bold italics:

2. The insert according to claim 1, wherein said body has a maximum thickness of three inches.

3. The insert according to claim 1, wherein said body has a **recessed surface** for supporting the buttocks of the child.

4. The insert according to claim 3, wherein said body has a **plurality of ribs** adjacent said recessed surface.

5. The insert according to claim 3, wherein the maximum depth of said **recessed surface** is within the range of one inch deep to 2 inches deep when measured from said first surface portion.

6. The insert according to claim 3, wherein said body in the region of said **recessed surface** is a minimum of 1 inch thick when said **recessed surface** is two inches thick and a maximum of 2 inches thick when said **recessed surface** is one inch thick.

7. The insert according to claim 1, wherein said **cradle angle**[7] is within the range of 105°–135°.

8. The insert according to claim 1, wherein said **acute angle**[8] is within the

---

[7]     The Court will construe the term "cradle angle" consistently throughout the various claims of the patent. Thus, the term "cradle angle" in Claims 2-9 means "the sum of the acute angle and the base angle."

[8]     The Court will construe the term "acute angle" consistently throughout the various claims of the patent. Thus, the term "acute angle" in Claims 2-9 means "the angle between the first surface portion and the straight portion of the curved surface portion of the support."

range of 15°–45°.

       9. The insert according to claim 1, further including first and second members associated with said body, said first and second members being **slices** of material similar to material of said body.

### a. "Recessed surface"

Goodbaby proposes that the term "recessed surface" refers to a "curved depression formed in the first surface of the support." It cites the specification as support, which states:

> The embodiment shown in FIGS. 18-18a is identical to the embodiment of FIGS 17, 17a except in the embodiment of FIGS 18, 18a **the surface portion 264 includes a curved depression or recessed surface 266** for engaging and supporting the buttocks of the child. The recessed surface 266 extends entirely across the surface portion 264. The recessed surface 266 extends from approximately 4 inches from the edge 268 of the surface portion 264 of the support 212 to approximately 1.5 inches from the opposite edge 270 of the support. The recessed surface 266 is a continuously curved, uninterrupted surface. The recessed surface 266 is concave to the planar surface portion 264.

(Col. 9, lines 6-38 (emphasis added); *see also* Figs. 18-21).

Plaintiffs assert that Goodbaby's construction "adds significant limitations outside what one having ordinary skill in the relevant art would normally understand, and would incorporate[] significant limitations over and above what the Plaintiff has a right to claim." According to Plaintiffs, the term "recessed surface" should be given its ordinary meaning, which they claim is "depression."

The Court agrees with Goodbaby that the patentees acted as their own lexicographers in defining the term "recessed surface" to be equivalent to "the curved depression in the first surface portion of the support." As highlighted above, the specification states that the "the surface portion 264 [i.e., first surface portion] includes a curved depression *or recessed surface* 266." Col. 9, lines 8-9 (emphasis added). Figures 18-21 further substantiate that the recessed

surface (i.e., curved depression) is in the first surface of the support. Thus, the Court adopts Goodbaby's construction and finds that the term "recessed surface" refers to a "curved depression formed in the first surface of the support."

**b. "Plurality of ribs"**

Goodbaby proposes that the term "plurality of ribs" refers to "ridges formed in the first surface of the support." As support, it cites the specification, which states:

> In the embodiment shown in FIGS 19, 19a, and 20-21, the support 212 includes a recessed surface 266 as illustrated in FIG. 18 and also includes a plurality of spaced apart parallel ribs 280 adjacent to the recessed surface 266. The child's torso would overlie the ribs 280. The ribs 280 are provided to help keep the child from sliding down in the car seat 202. Instead of ribs 280, egg-crate-like indentations can be provided.

(Col. 9, lines 39-47. *See also* Figs. 19-21).

Plaintiffs propose that the term "plurality of ribs" refers to "a structure to 'enhance gripping.'"

By replacing the term "rib" with the term "structure"–a word with a much broader meaning–Plaintiffs' proposed construction materially modifies a limitation in Claim 4. The Court therefore rejects Plaintiffs' proposed construction. A "rib" is "an elongated ridge." https://www.merriam-webster.com/dictionary/ribs. Moreover, the specification is clear that the ribs are in the first surface portion of the support. Thus, the Court adopts Goodbaby's construction and construes the term "plurality of ribs" to mean "ridges formed in the first surface of the support."

**c. "Slices"**

Finally, Goodbaby proposes that the term "slices" refers to "pieces cut horizontally from

the lower portion of the support." As support, it cites the specification, which states:

> FIG. 22 illustrates another embodiment of the support 212. The support 212 is made of three layered pieces, 300, 301, and 302. The pieces of the support 212 can be releasably attached to each other by Velcro to enable adjustment of the overall thickness of the support. In addition, the pieces 300, 301, 302 of the support 212 can simply be stacked on top of each other in a layered manner without being attached to each other. The support 212 formed by the three layered pieces has a maximum thickness of 3 inches as measured along line 305.

(Col. 9, lines 48-67; *see also* Fig. 22.



Plaintiffs assert that Goodbaby's "definition imposes limitations not otherwise clear from the claim language itself nor defined in the specification." They argue that the term "'said first and second members being slices of material similar to material of said body' is clear on its face, and does not require 'horizontal' segmentation nor 'from the lower portion.'"

The Court agrees with Plaintiffs that the meaning of "slices" is sufficiently clear on its face and that it therefore is not in need of construction.

**CONCLUSION**

For the foregoing reasons, the court construes the disputed terms as set forth herein. As requested by the parties in their Report of Parties' Planning Meeting, the Court orders the following:

Plaintiff to serve final infringement contentions - September 16, 2017

Close of fact discovery - October 1, 2017

Defendant to serve final non-infringement contentions and final invalidity and unenforceability contentions - October 1, 2017

Plaintiff to serve final validity and enforceability contentions - October 15, 2017

Exchange of opening expert reports - November 1, 2017

Exchange of responsive expert reports - December 1, 2017

Completion of expert discovery - January 11, 2018

Dispositive motion deadline - January 21, 2018

IT IS SO ORDERED.


　　　　　　　　　　　　　 /s/ Patricia A. Gaughan
　　　　　　　　　　　　　PATRICIA A. GAUGHAN
　　　　　　　　　　　　　United States District Court
　　　　　　　　　　　　　Chief Judge

Dated: 9/1/17